UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00672-FDW-DSC

| | |
|---|---|
| MATTHEW DENNIS NEWTON, as Administrator of the Estate of CLAY CRAWFORD MCCALL, III, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF CHARLOTTE, MECKLENBURG COUNTY, OLE S. SWENSON, JOHN J. GALLAND, RODNEY A. MONROE, ET AL., <br><br> Defendants. | ORDER |

THIS MATTER is before the Court on Defendant Mecklenburg County's ("Defendant County") Motion to Dismiss (Doc. No. 4). The parties have fully briefed the motions, and these matters are now ripe for disposition. For the reasons stated below, Defendant County's Motion to Dismiss is GRANTED.

## BACKGROUND

This is an action seeking damages pursuant to 42 U.S.C. § 1983 for violation of decedent Clay Crawford McCall, III's ("Decedent's") rights under the United States Constitution, as well as for state law negligence claims. Plaintiff Matthew Dennis Newton ("Plaintiff") is Decedent's brother and the administrator of his estate. (Doc. No. 1-6, ¶ 3).

Accepting the allegations of the Complaint as true, on September 14, 2014, three police officers employed by the Charlotte-Mecklenburg Police Department ("CMPD") were called to the home of Decedent's grandmother, where they confronted Decedent, and an altercation between the officers and Decedent resulted in one of the officer's firing gunshots at Decedent.

1

(Doc. No. 1-6, ¶¶ 9, 10, 26, 50, 54-80). Decedent suffered at least two gunshot wounds and later died in the hospital as a result of these wounds. (Doc. No. 1-6, ¶¶ 83-84).

On September 30, 2014, Plaintiff initiated this action alleging thirteen claims for relief, including claims against Defendant County for civil rights and deliberate indifference under 42 U.S.C. § 1983 and state law wrongful death claims based on negligence, gross negligence and assault and battery. (Doc. No. 1-6, pp. 20-22, 35-39). On December 5, 2014, Defendant City of Charlotte removed the case to this Court, where it was assigned to the undersigned. (Doc. No. 1).

On December 6, 2014, Defendant County filed the present Motion to Dismiss, arguing the Plaintiff failed to state a claim upon which relief may be granted because the County may not be held liable for negligence, or under the doctrines of agency or respondeat superior. (Doc. No. 4-1, p. 7). Defendant County further asserts that Plaintiff has no basis for its § 1983 claim against the County. (Doc. No. 4-1, p. 5).

The Motion to Dismiss has been fully briefed and is now ripe for the Court's review.

## DISCUSSION

### I. Standard of Review

A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly at 556).

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[ ] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era … it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief 'will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore it should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

In reviewing a Rule 12(b)(6) dismissal, generally "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, on a motion to dismiss. Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013) (citing

3

Braun v. Maynard, 652 F.3d 557, 559 n.1 (4th Cir. 2011)). Rule 12(d), Federal Rules of Civil Procedure, provides:

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

However, there are exceptions to this general rule, which allow the Court to consider other materials without converting a Rule 12(b)(6) motion into a motion for summary judgment. For example, the Court may properly take judicial notice of matters of public record. Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (noting it was proper during Rule 12(b)(6) review to consider "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services") (citing Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986)) ("Although this case comes to us on a motion to dismiss …, we are not precluded in our review of the complaint from taking notice of items in the public record … ."). "Under this exception, courts may consider 'relevant facts obtained from the public record,' so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." Clatterbuck, 708 F.3d at 557 (quoting B. H. Papasan, 478 U.S. at 283). Additionally, the Court may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (finding that the court could consider a newspaper article, which was not attacked to the plaintiff's complaint, at the 12(b)(6) stage because "(1) it was attached to [defendant's] motion to dismiss, and is clearly integral to, and was relied upon in, [plaintiff's] complaint; and (2)

[plaintiff] does not dispute its authenticity") (citing Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)) (additional citation omitted).

## II. Analysis

### a. Exhibits to Defendant's Motion to Dismiss

As a threshold matter, the Court addresses Plaintiff's request that "the Court disregard Defendant County's three attachments to its motion when ruling on the County's 12(b)(6) motion to dismiss or, in the alternative, convert the County's motion into a Rule 56 summary judgment motion pursuant to Rule 12(d)." (Doc. No. 9, p. 3). Plaintiff contends that Defendant "filed its motion to dismiss with three attached documents that were not attached to, quoted, or referenced in the complaint" and that "are not expressly relied on in nor are they integral to the complaint, and are wholly outside of the pleadings." Id. Defendant opposes Plaintiff's request to disregard the documents at issue or to convert Defendant's motion into one for summary judgment, citing to "an exception to the general rule regarding conversion of a Rule 12(b)(6) motion to summary judgment for documents attached to a motion to dismiss where the authenticity of the documents is not disputed." (Doc. No. 10, pp. 2-3).

The first document at issue, Exhibit A to Defendant's Motion to Dismiss, is an affidavit of the County Manager of Mecklenburg County. (Doc. No. 4-1). The Court excludes this affidavit because it would be improper to consider it at the Rule 12(b)(6) stage. The Complaint repeatedly alleges that the County had the right to direct and control the policies and procedures of the CMPD, a contention directly at odds with the claims set forth in the affidavit. Because this document does not fall into one of the narrow exceptions to the general rule governing documents attached to Rule 12(b)(6) motions to dismiss, the Court will exclude this document from its consideration of the motion at issue.

However, the Court will consider the remaining two documents at issue, Exhibits B and C to Defendant's Motion to Dismiss, in ruling on this Motion, as these documents fall within the exception allowed for the Court to take judicial notice of matters of public record. These Exhibits are the "1993 Agreement Between the City of Charlotte and Mecklenburg County for the Consolidation of the Charlotte and Mecklenburg Police Departments" and the "Agreement Between the City of Charlotte and Mecklenburg County for the Continued Consolidation of the Charlotte-Mecklenburg Police Department" (collectively, the "Agreements"). (Doc. No. 4-2). The Court considers the facts contained in these two publicly-available documents in the light most favorable to Plaintiff, along with the well-pleaded allegations of Plaintiff's Complaint. Moreover, the Court may consider these Agreements in ruling on Defendant's Motion to Dismiss because these documents are attached to Defendant's motion, are integral to the Complaint, and Plaintiff does not challenge the authenticity of the documents. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship, 471 F.3d at 526 n.1). Throughout his Complaint, Plaintiff repeatedly relies upon these Agreements to support his allegations against the County. See, e.g., Compl. ¶¶ 18, 23, 24, 26. Accordingly, the Court may consider Exhibits B and C to Defendant's Motion to Dismiss without converting the motion into one for summary judgment. See Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (quoting Philips, 572 F.3d at 180 ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record. We may also consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.")).

**b. Plaintiff's Claim Against Defendant Mecklenburg County for Wrongful Death**

Plaintiff contends that "Defendant County's negligent acts and omissions [related to the CMPD's policies and procedures] constitute proximate causes of the incident which resulted in injuries to and the death of [Decedent] which Plaintiff … is entitled to recover damages under the North Carolina Wrongful Death Statute … ." (Doc. No. 1-6, ¶ 102). The Complaint further asserts that because the CMPD officers at issue in the case "were acting within the course and scope of their employment and/or agency with the CMPD" when they committed the alleged acts of negligence, Defendant County is liable under the doctrines of agency, vicarious liability, and respondeat superior. (Doc. No. 1-6, ¶ 103).

"A principal is liable for the wrongful acts of its agent under the doctrine of respondeat superior when the agent's act is (1) expressly authorized by the principal; (2) committed within the scope of the agent's employment and in furtherance of the principal's business; or (3) ratified by the principal." Gammons v. N.C. Dep't of Human Resources, 119 N.C. App. 589, 590, 459 S.E.2d 295, 296 (1995) (citing B.B. Walker Co. v. Burns Int'l Sec. Servs., 108 N.C. App. 562, 424 S.E.2d 172, disc. review denied, 333 N.C. 536, 429 S.E.2d 552 (1993)). "A principal is not vicariously liable for the wrongful acts of the agent who is not subject to the direction and control of the principal with respect to the details of the work and is subordinate only in accomplishing a result desired by the principal." Id. at 590-91 (citing Vaughn v. Dep't of Human Resources, 296 N.C. 683, 252 S.E.2d 792 (1979)). Finally, "[a] principal's vicarious liability for the torts of his agent depends on the degree of control retained by the principal over the details of the work as it is being performed." Id. at 591 (quoting Vaughn, 296 N.C. at 686, 252 S.E.2d at 795).

With respect to Plaintiff's claims based on the doctrine of agency, the North Carolina courts have held that "[t]he vital test in determining whether an agency relationship exists is to

be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details." Diggs v. Novant Health, Inc., 177 N.C. App. 290, 299, 628 S.E.2d 851, 857 (2006) (quoting Hylton v. Koontz, 138 N.C. App. 629, 636, 532 S.E.2d 252, 257 (2000)). The courts have made it clear that "'the principal must have the right to control *both the means and the details of the process* by which the agent is to accomplish his task in order for an agency relationship to exist.'" Id. (quoting Wyatt v. Walt Disney Co., 151 N.C. App. 158, 166, 565 S.E.2d 705, 710 (2002)) (emphasis in original) (additional quotations and citations omitted).

Plaintiff's cause of action for wrongful death based on the doctrines of agency, vicarious liability and respondeat superior hinges on his claim that the CMPD officers at issue in the case were acting within the scope of their employment and/or agency with the CMPD at the time relevant to the action *and* on his allegations that the County had the actual and/or apparent right and legal authority to direct and control the CMPD, its policies and procedures, and officers and employees. (Doc. No. 1-6, ¶¶ 24, 103). However, as expressly stated in the agreement which initially consolidated the City of Charlotte and Mecklenburg County Police Departments into the CMPD, as of October 1, 1993 – and as continued under the 1996 Agreement – the employment of all County Police Department employees terminated and these employees became City employees. (Doc. No. 4-2, Ex. B, C). Moreover, the Agreements expressly provide that all functions – except for building security, intake center/arrest processing, radio services (non-police) and dispatch and telecommunications – are consolidated under the City of Charlotte. See id. Accordingly, it is clear that the CMPD officers at issue in this case were employees of the City of Charlotte, and not of Defendant County, during the relevant time period. Furthermore, it is clear that the control and supervision of the CMPD officers rested with the City of Charlotte,

and not with Defendant County. As such, the Complaint fails to state a claim for relief based on the doctrines of agency, vicarious liability and respondeat superior.

In addition to relying on the above-stated doctrines, Plaintiff also contends that "Defendant County had a non-delegable duty to engage in law enforcement activities within its borders." (Doc. No. 1-6, ¶ 25). However, as Defendant County asserts, this claim "is a legal conclusion without support." (Doc. No. 4-1, p. 8). As Defendant County notes, the Agreements were authorized by North Carolina statute, which provides that "[a]ny unit of local government in this State and any one or more other units of local government in this State … may enter into contracts or agreements with each other in order to execute any undertaking." (Doc. No. 4-1, pp. 8-9) (citing N.C. Gen. Stat. § 160A-461). State law additionally provides that "[a] county may cooperate with the State and other local governments in law-enforcement matters … ." N.C. Gen. Stat. 153A-212. Thus, it is clear that Defendant County acted within its statutory authority in entering into the Agreements with the City of Charlotte to create the CMPD. Therefore, where there is no dispute as to the validity of the Agreements, and where the Agreements make it clear that the City, not Defendant County, controlled the functions of the CMPD relevant to this case, Plaintiff has failed to establish the a duty owed by Defendant County to Decedent, which is necessary to substantiate his claim for negligence against Defendant County. See Clark v. Red Bird Cab Co., 114 N.C. App. 400, 403, 442 S.E.2d 75, 77 (1994) (citing Paschall v. N.C. Dep't of Correction, 88 N.C. App. 520, 364 S.E.2d 144 (1988)) ("In tort, there will be no liability unless the law imposes a duty.").

For the reasons provided above, Plaintiff's cause for wrongful death against Defendant County is dismissed.

  c. **Plaintiff's Claims for Negligent Hiring, Training, and Supervision Against Defendant County**

Plaintiff alleges numerous claims of negligent hiring, training and supervision against Defendant County and bases these claims on the same set of facts discussed above, which the Court has now dismissed as unsupported legal conclusions. (Doc. No. 1-6, ¶¶ 149-151).

Under North Carolina law, in order to establish a claim for negligent hiring, supervision or retention, a plaintiff must show:

> (1) the specific negligent act on which the action is founded … (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision, …; and (4) that the injury complained of resulted from the incompetency proved.

Taft v. Brinley's Grading Servs., Inc., 738 S.E.2d 741, 749 (N.C. App. 2013)) (quoting Moricle v. Pilkington, 120 N.C. App. 383, 386, 462 S.E.2d 531, 533 (1995) (quoting Medlin v. Bass, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990))). Inherent to this cause of action is the employer-employee relationship.

Therefore, where the Agreements make it clear that the CMPD officers at issue in this case were employees of the City of Charlotte, and as such were hired, supervised and trained by the City of Charlotte, the requisite employer-employee relationship does not exist to support Plaintiff's negligence claims against Defendant County. Accordingly, Plaintiff's claim against Defendant County for negligent hiring, supervision, and training must be dismissed.

### d. Plaintiff's 42 U.S.C. § 1983 Claims Against Defendant Mecklenburg County

Title 42 U.S.C. § 1983 is a federal statutory remedy available to those deprived of rights secured to them by the Constitution and, in a more sharply limited way, the statutory laws of the United States. "Local governing bodies … can be sued directly under § 1983 for monetary,

declaratory, or injunctive relief where … the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978). However, the Supreme Court has made it clear "that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691 (emphasis in original); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citing Monell, 436 U.S. at 694-95)) ("A municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983."); Carter v. Morris, 164 F. 3d 215, 218 (4th Cir. 1999). Accordingly, a plaintiff seeking to impose liability on a municipality for the constitutional torts of its employees under § 1983 must prove that some municipal "policy" or "custom" caused a deprivation of the plaintiff's rights. Monell, 436 U.S. at 694.

The Fourth Circuit has long recognized Monell and its progeny requiring the plaintiff to adequately plead and prove the existence of an official policy or custom that proximately caused a deprivation of rights. Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009). Furthermore, the identification of a specific municipal policy or custom is a threshold requirement. See Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of Comm'rs of Bryan City v. Brown, 520 U.S. 397, 403-04 (1997) (citing Monell, 436 U.S. at 694). Furthermore, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury

11

alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. at 404. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id. at 405; see also City of Canton, 489 U.S. at 391-92. With these rigorous standards in mind, the Fourth Circuit has found that "a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation. Instead, a 'plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or statutory right will follow the decision.'" Carter at 218 (quotations and citations omitted) (emphasis in original).

In Carter v. Morris the Fourth Circuit identified four possible sources of "official policy or custom" giving rise to municipal liability: (1) "written ordinances and regulations;" (2) "affirmative decisions of individual policymaking officials;" (3) omissions by policymaking officials 'that manifest deliberate indifference to the rights of the citizens;" or (4) a practice "so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" 164 F.3d at 218 (quotations and citations omitted).

Plaintiff's Complaint alleges that Defendant County violated Decedent's constitutional rights by (1) depriving Decedent of "clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendment[s]" and (2) "fail[ing] to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline officers of the CMPD with

12

deliberate indifference to [Decendent's] constitutional rights." (Doc. No. 1-6, ¶ 162). The Complaint further claims that "[t]he unconstitutional actions and/or omissions of Defendants as well as other officers employed or acting on behalf of these Defendants, on information and belief, were pursuant to … customs, policies, practices, and/or procedures of the CMPD, which were directed, encouraged, allowed, and/or ratified by policy making officers for Defendants City and County." (Doc. No. 1-6, ¶ 161).

In support of its Motion to Dismiss, Defendant County asserts that it "has not been involved in the management or control of any police function or department since 1993," and, as such, "'[t]here is no policy statement, ordinance, regulation, or decision officially adopted and promulgated' by Mecklenburg County that can form the basis for any liability by the County." (Doc. No. 4-1, p.6) (citing <u>Monell v. Dep't of Soc. Serv. Of the City of N.Y.</u>, 436 U.S. 658, 690 (1978)). In sum, Defendant County asserts that "[t]here is no basis for the § 1983 claims against Mecklenburg County since the County has never been involved in the operation or management of the [CMPD]." (Doc. No. 4-1, p.7).

Based on the law stated above, and a thorough review of Plaintiff's Complaint, the Court finds that the Complaint fails to allege a cause of action cognizable under 42 U.S.C. § 1983. While the Complaint provides conclusory legal statements asserting that the County violated Decedent's constitutional rights, it contains no factual allegation identifying a policy or custom of Defendant County that caused the injury alleged. Thus, the Complaint fails to meet the standard set in <u>Monell</u> for § 1983 claims brought against governmental bodies. Additionally, with respect to Plaintiff's allegations based on alleged customs of Defendant County, the Complaint fails to allege any custom that "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." <u>Bd. of Cnty.</u>

Comm'rs of Bryan City at 404 (citations omitted). Finally, Plaintiff fails to "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404. Instead, the Complaint relies on the conclusory legal claim that Defendant County was "a moving force and/or proximate cause of the deprivations of [Decedent's] clearly-establish and well-settled constitutional rights in violation of 42 U.S.C. § 1983." (Doc. No. 1-6, ¶ 163).

For the reasons stated above, the Court finds that Plaintiff's claim fails to state a claim for municipal liability against Defendant County under 42 U.S.C. § 1983.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Mecklenburg County's Motion to Dismiss pursuant to Rule 12(b)(6) (Doc. No. 4) is GRANTED. Accordingly, Defendant County is dismissed from this lawsuit.

IT IS SO ORDERED.

Signed: January 26, 2015

_____
Frank D. Whitney
Chief United States District Judge